UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CADENA FENWICK,

        Plaintiff,                      Hon. Ellen S. Carmody

v.

                                            Case No. 1:18-cv-290

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 36 years of age on her alleged disability onset date. (PageID.196). She successfully completed high school and worked previously as a certified nursing assistant. (PageID.51). Plaintiff applied for benefits on November 13, 2014, alleging that she had been disabled since January 12, 2013, due to Chiari malformation,[1] chronic headaches, chronic stomach problems, anxiety, depression, attention deficit disorder, cavity in spinal cord, arthritis in nack and back, chronic neck and back pain, and diabetes. (PageID.196-97, 218). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (PageID.110-94).

On December 15, 2016, ALJ Alexandra Kwak conducted a hearing with testimony being offered by Plaintiff and a vocational expert. (PageID.59-108). In a written decision dated March 7, 2017, the ALJ determined that Plaintiff was not disabled. (PageID.40-53). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.26-31). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can

---

[1] Chiari malformation is a condition in which "brain tissue extends into your spinal canal" and "occurs when part of your skull is abnormally small or misshapen, pressing on your brain and forcing it downward." Chiari Malformation, available at https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited on March 6, 2019).

[2] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) cervical degenerative disc

---

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

disease status post decompressive craniectomy for Chiari malformation with subsequent revision; (2) status post laminectomy at L3-4 for tethered cord; (3) lumbar degenerative disc disease; (4) fibromyalgia; (5) obesity; (6) history of attention deficit hyperactivity disorder (ADHD); and (7) chronic pain syndrome, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.42-46).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) she can occasionally climb ramps and stairs, but can never climb ladders, ropes, and scaffolds; (2) she can occasionally stoop, kneel, and crouch, but can never crawl; (3) she cannot have concentrated exposure to hazards such as moving machinery or unprotected heights or environmental irritants such as fumes, odors, and gases; (4) she is limited to simple, routine tasks that can be learned in 30 days or less; (5) she cannot perform production work; (6) she can tolerate occasional contact with co-workers and the public; and (7) she can tolerate occasional changes in the work setting. (PageID.46).

The ALJ found that Plaintiff was unable to perform her past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis

added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert testified that there existed approximately 700,000 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.97-102). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

**I.      Medical Evidence**

In addition to Plaintiff's testimony at the administrative hearing, the administrative record contained copies of Plaintiff's statements and treatment records. The ALJ described this evidence as follows:

> At age thirty-three, in 2009, the claimant underwent a suboccipital decompressive craniectomy with C1 removal for Chiari malformation (Exhibit 3F; 4F/1, 30-33). The claimant testified she was diagnosed at 18, but was able to maintain full time work activity prior to her surgery and returned to work five months following surgery. Following her 2009 surgery, she was able to maintain full time work and reported ongoing mild headaches (see, e.g., Exhibit 12F/9).
> 
> A March 2013 MRI of the lumbar spine revealed mild degenerative changes at L4-5 with components of disc protrusion abutting the traversing left L5 nerve root at the spinal canal and a portion of the right L4 dorsal root ganglion at the right foraminal/extraforaminal

junction, but without gross displacement or compressive distortion (Exhibit 1F/21-22). An MRI of the brain in July 2013, did not show any lesion and she reported in April 2014, her headaches were similar to those she experienced at age 18 (Exhibit 3F). In April 2014, the claimant had a normal neurological examination, normal gait, normal find to nose, and no motor or sensory deficit (Exhibit 3F/3). A July 2014 MRI of the cervical spine revealed post-operative changes with minor spinal stenosis at C3-4 and C5-6 without evidence of spinal cord or nerve root compression/abutment. She also had a spinal cord syrinx at C6 (Exhibit 4F/22). Overall, imaging post surgery did not suggest changes other than those correlating to the surgery (see, Exhibit 7F/30, 32-33, 45-47; 8F/45-46; 9F/28).

Neurologist Mark Krinock, M.D., has treated the claimant for her headaches. However, he found no specific correlation with her headaches other than the fact they may be more of a cluster-type with waves of increased intensity and then improvement (Exhibit 12F/1 l). She was referred to a headache center, but the record does not suggest she ever followed through with the referral or participated in such treatment. Dr. Krinock noted a January 2015 MRI demonstrating post- surgical changes with a small syrinx within the cervical small, but showing improvement with no compression or distortion (Exhibit 12F/11). The claimant presented again with back pain in March 2015. Imaging revealed mild degenerative disc disease in the lumbar spine, post-surgical changes in the cervical spine, but no tethered cord (Exhibit 12F/7). Dr. Krinock noted at this visit her "burning diffuse discomfort" is more consistent with fibromyalgia and prescribed gabapentin. When the claimant returned in May 2015 and exhibited normal upper and lower extremity strength, had normal gait and station with normal coordination, Dr. Krinock noted she is fairly stable without any surgical repair needed (Exhibit 12F/3).

An additional MRI of the spine in October 2015 revealed no acute process, an unchanged syrinx at C6-7, and small left paracentral disc protrusion without evidence of nerve impingement at L4- 5 (Exhibit 10F/20). An MRI of the brain was unremarkable with no mass, hemorrhage or acute infarction (Exhibit 10F/21).

In November 2015, the claimant then presented to the Michigan Head and Spine Institute for an evaluation with Holly Gilmer, M.D. (Exhibit 10F/14). While the examination was unremarkable with no strength, tone or sensory deficits, along with neurologically intact, after Dr. Gilmer's review of the MRI, she suggested the Chiari

stenosis should be explored surgically with lysis of adhesion (Exhibit 10F/17). Thereafter, in January 2016, the claimants underwent a repeat Chiari decompression (Exhibit 11F). The claimant's headaches were noted as gone and her mid scapular pain and lower back pain were also gone (Exhibit 10F/10). She exhibited a normal gait and was noted as progressing nicely without full strength, intact deep tendon reflexes, and intact coordination (Exhibit 10F/12). During physical therapy, the claimant had some reduced muscle strength, but was able to ambulate independently and testing was within normal limits (Exhibit 14F/51). Thereafter, physical examinations reveal full strength in all muscle groups tested.

In April 2016, the claimant reported feeling much better than prior to surgery, but having significant back pain radiating into both lower extremities. Upon examination, the claimant's motor and strength were full and intact, she had normal coordination, and normal stance and gait without difficulty (Exhibit 15F/6). A February 2016 MRI of the lumbar spine revealed a second fatty filum pulled dorsally, consistent with a tethered spinal cord. Dr. Gilmer recommended a spinal cord untethering, which included a L3-L4 laminectomy which took place in June 2016 (Exhibit 15F/6). By July 2016, the claimant reported the pain to her lower extremities was gone, and is able to void and empty her bladder, which was difficult prior to surgery. The claimant reported walked around her baseline and no longer required a walker (Exhibit 15F/7). Her physical examination was unremarkable and Dr. Gilmer noted the claimant was "progressing nicely" (Exhibit 15F/8). In October 2016, the claimant reported nonradiating back pain with some numbness down the right hamstring (Exhibit 15F/9). Dr. Gilmer noted an MRI suggests no evidence of recurrent tethering or significant disc disease and referred her to physical therapy (Exhibit 15F/11). The claimant testified she is currently taking oral Baclofen to treat her muscle spasms as well as weight loss medications, and Topamax to treat her migraines. The record does not suggest additional treatment, surgery, or recommendations have been made since her June 2016 surgery to treat her alleged symptoms. While she has required additional surgery since her original 2009 decompression surgery, the record does not support her musculoskeletal impairments preclude her from all work activity.

The claimant also testified to using Xanax for her anxiety and previously taking Adderall to treat symptoms of attention deficit disorder. In August 2014, the claimant underwent testing suggesting attention problems (Exhibit 6F). However, based on pattern of

> performance, there is noted evidence of possible symptom exaggeration. The record does not reflect current mental health treatment for anxiety, attention deficit disorder, or chronic pain syndrome. She has not required inpatient psychiatric care or emergency crisis treatment. Examinations note normal mood and affect, but given her symptoms of fibromyalgia, and attention deficit disorder, I find the claimant is limited to simple, routine tasks that can be learned in 30 days or less involving no production work and only occasionally changes in the work setting and occasional interaction with coworkers and the public.

(PageID.47-48).

## II. The ALJ's Credibility Assessment is not Supported by Substantial Evidence

At the administrative hearing, Plaintiff testified that her ability to function was more limited than the ALJ recognized. (PageID.64-97). The ALJ, however, discounted Plaintiff's allegations on the ground that such "are not entirely consistent with" the record evidence. (PageID.48-49). Plaintiff argues that she is entitled to relief on the ground that the ALJ's assessment of her credibility is not supported by substantial evidence. The Court agrees.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 Fed. Appx. 773, 775 (6th Cir., Aug. 29, 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)) *Hash v. Commissioner of Social Security*, 309 Fed. Appx. 981, 989 (6th Cir., Feb. 10, 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman*, 105 Fed. Appx. at 801 (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human*

*Services*, 820 F.2d 777, 780 (6th Cir. 1987). As the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Nevertheless, the ALJ is not permitted to make credibility determinations based upon "an intangible or intuitive notion about an individual's credibility." *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 247 (6th Cir. 2007). Instead, the ALJ's rationale for discrediting a claimant's testimony "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248. Accordingly, "blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Id.*

In support of her decision to discount Plaintiff's credibility, the ALJ relied on four findings: (1) Plaintiff's symptoms are "relatively well controlled" when she takes her medications; (2) Plaintiff has traveled by car and airplane; (3) Plaintiff has attended basketball, volleyball, and cheerleading competitions; and (4) Plaintiff's daily activities are inconsistent with her subjective allegations. (PageID.48-49). These justifications, however, do not stand up to scrutiny.

The assertion that Plaintiff's symptoms are "relatively well controlled" with medication overlooks the serious nature of Plaintiff's impairments and that such required multiple invasive surgical procedures involving the brain and spinal cord. The ALJ's statement suggests that Plaintiff merely suffered from impairments which were adequately treated by conservative

methods only. Furthermore, the record indicates that despite multiple surgical procedures and medications, Plaintiff continues to experience significant symptoms. (PageID.958-60, 966).

The ALJ's citation to Plaintiff's alleged activities is likewise less consequential when examined more closely. First, with the exception of Plaintiff's hearing testimony, the evidence on which the ALJ's assessment relies predates the deterioration in Plaintiff's condition which necessitated multiple surgeries. (PageID.232-39, 615, 786, 864). As for the ALJ's assertion that Plaintiff's ability to "travel by car and airplane" undercuts her credibility, the ALJ has mischaracterized the record.

As the ALJ recognized, Plaintiff reported in a 2014 function report that she drives a car when "going out." (PageID.235). The ALJ failed to mention, however, that Plaintiff also reported that she does not often leave her house. (PageID.235). The ALJ also cited to Plaintiff's administrative hearing testimony that she once rode in a car to New York and drove herself to the hearing. (PageID.65-66, 82-83). The ALJ failed to mention, however, that because of Plaintiff's pain and impairments, the 10-hour drive to New York was undertaken in several shorter increments. (PageID.65-66, 82-83). Likewise, the ALJ did not recognize that Plaintiff had to stop twice during her 90-minute drive to the administrative hearing because of back pain. (PageID.65-66, 86-87).

As for the fact that Plaintiff once rode in an airplane, the ALJ provides no context for such. For example, the ALJ has not cited to any evidence indicating whether the airplane trip in question was for pleasure, as the ALJ insinuates, or for post-surgery convalescence, as Plaintiff suggests but does not establish. Moreover, this event appears to have occurred prior to the deterioration in Plaintiff's condition. Finally, the ALJ asserts that Plaintiff performs a variety of

daily activities which are allegedly inconsistent with Plaintiff's subjective allegations. Again, a review of the evidence cited by the ALJ reveals that the ALJ has mischaracterized the record and Plaintiff's statements and testimony. (PageID.64-97, 232-39, 615, 786, 864).

In sum, the Court finds that the ALJ's rationale for discounting Plaintiff's testimony is not supported by substantial evidence. *See, e.g., Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015) ("working sporadically or performing household chores are not inconsistent with being unable to engage in substantial gainful activity"); *Lipke v. Astrue*, 575 F.Supp.2d 970, 982 (W.D. Wisc. 2007) (that a claimant may be able to "engage in sporadic physical activities" is not inconsistent with disability).

## II. Remand is Appropriate

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if "all essential factual issues have been resolved" and "the record adequately establishes [her] entitlement to benefits." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994); *see also*, *Brooks v. Commissioner of Social Security*, 531 Fed. Appx. 636, 644 (6th Cir., Aug. 6, 2013). This latter requirement is satisfied "where the proof of disability is overwhelming or where proof of disability is strong and evidence to the contrary is lacking." *Faucher*, 17 F.3d at 176; *see also*, *Brooks*, 531 Fed. Appx. at 644. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither competent nor authorized to undertake in the first instance. Moreover, there does not exist compelling evidence that Plaintiff is disabled. Accordingly, this matter must be remanded for further administrative action.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **vacated and the matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**. A judgment consistent with this opinion will enter.


Dated: March 25, 2019                                                  /s/ Ellen S. Carmody
                                                                                                 ELLEN S. CARMODY
                                                                                                 United States Magistrate Judge